UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 25-CR-291 |
| v. : | |
| : | |
| JOSHUA ROSSER, : | |
| : | |
| Defendant. : | |

## DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER AND REQUEST FOR EXPEDITED HEARING

Defendant Joshua Rosser, through undersigned counsel, pursuant to 18 U.S.C. § 3145(b), respectfully moves this Court to revoke the Order of Detention issued by Magistrate Judge Upadhyaya on September 5, 2025, and issue an order authorizing pretrial release with location monitoring, appointing Latoya Bell as third-party custodian, and any other conditions deemed appropriate by the Court. The United States opposes this Motion and the relief sought.

### Procedural History

Mr. Rosser was arrested on September 2, 2025. He was charged by Complaint on September 3, 2025 with Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. §§ 111(a)(1) and (b). He made his initial appearance on September 3, 2025. A detention hearing was held on September 5, 2025. The Court granted the government's motion for pretrial detention. On September 18, 2025, the government filed an Information charging Mr. Rosser with Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. §§ 111(a)(1) and Felony Fleeing from Law Enforcement in violation of 50 D.C. Code § 2201.05(b)(2). A status hearing is scheduled for October 1, 2025 at 2:00 pm. Mr. Rosser is being held at the D.C. Jail.

1

**Standard of Review**

This Court has authority to review an order of release or detention issued by a magistrate judge upon a motion filed by either party. 18 U.S.C. § 3145(a)-(b). Any such motion shall be determined "promptly." *Id.* This Court reviews the ruling of a magistrate judge's detention order *de novo*. *United States v. Sheffield,* 799 F.Supp.2d 18, 19–20 (D.D.C. 2011). "The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *Id.* at 20 (quoting *United States v. Hanson,* 613 F. Supp. 2d 85, 88 (D.D.C. 2009)). Even in a case involving a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(A), "the Court must evaluate the weight of the evidence against each defendant seeking reconsideration of the detention orders and pretrial release to determine whether pretrial detention is proper." *United States v. Muschetta*, 118 F. Supp. 3d 340, 344 (D.D.C. 2015)

**Legal Standard**

Pursuant to the Bail Reform Act, the Court must order the pretrial release of a defendant on personal recognizance or unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Pretrial detention may be ordered where, after a hearing upon motion by the government, a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

Should the Court impose conditions of release, they should be "the least restrictive" conditions that the Court "determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). In evaluating whether conditions of release are adequate to satisfy the mandate of the Bail Reform

Act, the Court shall consider: 1) the nature and circumstances of the offense charged; 2) the weight of the evidence against the person; 3) the history and characteristics of the person; and 4) the nature and seriousness of the danger to any person and the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The government must prove dangerousness to the community by clear and convincing evidence. *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986); 18 U.S.C. § 3142(f). Moreover, to find danger to the community, the government must provide evidence to "support such a conclusion with a high degree of certainty." *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).

**Conditions of Release Exist To Satisfy The Requirements of the Bail Reform Act**

Mr. Rosser respectfully submits that conditions of release exist that satisfy the conditions of the Bail Reform Act. Specifically, Mr. Rosser proposes the following conditions of pretrial release:

1)   He will comply with the requirements of 18 U.S.C. § 3142 (c)(1);

2)   Latoya Bell will serve as a third-party custodian;

3)   He will be subject to home detention at home of Latoya Bell and allowed to leave the home for work, meeting with his counsel, and medical appointments;

4)   The residence would be inspected by Pretrial Services before he is allowed to move in;

5)   He will not be permitted to drive; and

6)   He will wear a GPS electronic monitoring unit and will follow all procedures specified by Pretrial Services.

Turning to the factors set forth in 18 U.S.C.§ 3142(g), our submission is that these proposed conditions of release are adequate to assure Mr. Rosser's appearance at all future court proceedings and the safety of the community.

I.   **Nature and Circumstances of Offenses Charged**

The government alleges that Mr. Rosser assaulted a law enforcement officer while fleeing an attempted traffic stop. On September 2, 2025, a caravan of officers was patrolling the District of Columbia. The law enforcement officers were members of the Executive Order 14252 Task Force. They were in plainclothes and driving unmarked vehicles, including a minivan. The government alleges that Mr. Rosser was driving a vehicle with "heavily tinted" windows and had a temporary paper tag that "[o]fficers immediately recognized []to be a counterfeit Texas Buyer's tags based on their experience and knowledge." Statement of Facts at P. 1. The paper tag also resulted in "NO RETURN" when ran through NCIC. Notably, the alleged counterfeit tag was in the rear of the vehicle and not visible when law enforcement initial observed Mr. Rosser's vehicle.

While Mr. Rosser was stopped at a red light, one of the unmarked police vehicles pulled up next to him. The vehicle had heavily tinted windows and a Virginia license plate:



After the light turned green, the undercover van crossed a solid line pulled in front of Mr. Rosser.



After cutting in front of Mr. Rosser's vehicle, the undercover van reversed into Mr. Rosser's vehicle, striking it. Mr. Rosser then maneuvered around the vehicle that struck him and turned left at the traffic light.

Law enforcement pursued Mr. Rosser. During the pursuit, it is alleged that Mr. Rosser struck an unmarked vehicle, causing a Deputy US Marshal to hit his "head [on] his head rest, resulting in an injury to his head." The injury was described as minor, and resulted in the use of over the counter pain medicine for three (3) days. The same Deputy US Marshal has stated that Mr. Rosser was attempting to "flee from law enforcement and that [Mr. Rosser] was not trying to directly hit the DUSMs vehicle." September 10, 2025 Email from AUSA Jared English. The chase ended and Mr. Rosser was arrested in the 4100 Block of Stanley Street, SE. No weapons or drugs were found on Mr. Rosser, in his vehicle, or in the area where he was arrested.

II.     **Weight of Evidence**

Congress has mandated that no provision of the Bail Reform Act "shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Undersigned counsel is in the process of reviewing the discovery, including footage from body worn cameras. With

5

regards to the charged offense, the law enforcement officer that allegedly suffered the minor injury has stated that he does not believe Mr. Rosser intended to strike his vehicle. Further, it was an unmarked police vehicle that first struck Mr. Rosser's vehicle. As further described below, Mr. Rosser did not know the van that struck him belonged to law enforcement. He was in fear for his life during the time of the pursuit based on the circumstances that initiated the pursuit and events from days prior. His state of mind must be considered in evaluating his alleged actions on September 2, 2025. Lastly, the alleged counterfeit tag was not visible when law enforcement first observed Mr. Rosser's vehicle, and it is unknown how law enforcement recognized it to be counterfeit when it was not visible before they performed a U-turn in the middle of the street to pull behind Mr. Rosser.

### III.  History and Characteristics

When evaluating the history and characteristics of the defendant, the Court considers "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Mr. Rosser has a loving, supportive family and close friends. The proposed third-party custodian, Latoya Bell, is prepared to accept Mr. Rosser into her home. His father and sister were present for the detention hearing on September 5, 2025.

Mr. Rosser is a lifelong resident of the District of Columbia. He is a "great young man." Exhibit A, Letter from Tracey Robinson. He comes before the Court with no criminal convictions. Tragically his mother has struggled with mental health issues her entire life. She was unable to care for Mr. Rosser or his siblings. He spent the first 9 years of his life living with his paternal grandmother. The family struggled in every conceivable way. Mr. Rosser's Aunt, Stephanie

6

Graves, took him in. She notes how he was initially "a little rambunctious and extremely independent, but that all changed once he was given structure and guidance." Exhibit A, Letter from Stephanie Graves.

After graduating high school, Mr. Rosser set his sights on college. He was planning to attend college in the U.S. Virgin Islands on a scholarship. A visit to the campus led him to believe it was too far from home, and it was not a good fit. He regrets that decision almost daily. A joke about having to take a boat to classes scared him away. Instead, he enrolled in college at Chowan University in Murfreesboro, North Carolina. Mr. Rosser was thrilled to be able to attend college and be surrounded by individuals seeking to better themselves. It was different from what he saw in Washington, D.C. Unfortunately, funding he was relying on to pay for school fell through. He could not afford to stay in school and left during the first year. After returning home, he has held multiple retails jobs, ranging from dollar stores, auto repair stores, to grocery stores. He also became a father. Shortly before being arrested, he found an opportunity working for a staffing company based in Virginia. He was excited about the opportunity. It was a chance to advance his career and work with school age children.

A few days before his arrest in this case, Mr. Rosser was the victim of a crime. He was moving his belongings out of the apartment of an acquaintance, J.C. He was previously in a romantic relationship with J.C. While he was doing this, J.C. arrived at the apartment with her brother and several other males. The group attacked Mr. Rosser. They beat him with their hands, and he was stabbed multiple times. He pleaded for his life. After several minutes, the group left, leaving Mr. Rosser bloodied.



After allowing time to pass and believing they were gone, Mr. Rosser left and went to the home of a relative that lived close by. He was in immense pain, and his clothes were stained with blood from the attack.

His family helped clean him up and calm him down. They also took pictures of his wounds. Mr. Rosser contacted the police. The event was very traumatic for Mr. Rosser and was fearful that those responsible would hunt him down and kill him. He had not mustered the ability to make a formal report to law enforcement before his arrest in this case. He had spoken to an MPD investigator and was planning to meet him to make a formal report.

Mr. Rosser has never spent the night incarcerated prior to his arrest in this case. He is at the DC Jail Central Treatment Facility (CTF). The conditions at the jail are difficult for even those with lengthy criminal histories. Last week, three inmates were stabbed in one day. Liam Bowman, Three inmates injured in D.C. jail stabbing, police say., Washington Post (9/26/25) https://www.washingtonpost.com/dc-md-va/2025/09/26/dc-jail-stabbing/. There are well

documented reports of rodent infestations, flooding, mold, and constant violence. *Urgent Need for New D.C. Jail*, Report by the Office of the D.C. Auditor, May 28, 2025[1]. There are also issues with accessing medical care, specifically being seen by outside providers. *Id*. at P. 81. Mr. Rosser if suffering from a serious medical issue, a broken foot. He has been waiting for weeks for a referral to be approved related to his broken foot. He was told that he may suffer permeant impairment in his foot if the surgery is not performed. The period of incarceration he has served to date, particularly in the punitive conditions existing at the DC Jail, will ensure that Mr. Rosser follows all conditions imposed by the Court. He wants to return to his family and return to working to support his family.

**IV.    Danger to Community**

This Court has noted that certain "supervisory conditions," such as home detention and the selection of a suitable, third-party custodian can mitigate the Court's concern for the safety of the community. *See United States v. Klein*, 539 F. Supp. 3d 145, 155 (D.D.C. 2021) (noting that despite previous convictions for unlawful possession of a firearm, "it is possible that appropriate conditions on [the defendant's] release might provide sufficient assurances of community safety"). A proposed third-party custodian may be considered unsuitable if she or he encouraged the alleged criminal activity or recommended to the defendant measures by which to destroy evidence after engaging in criminal activity. *See id.* at 156. A third-party custodian may be insufficient if the Court finds there to be a serious question regarding their ability to "promptly and truthfully" report violations of the defendant's conditions of release. *United States v. Caldwell*, No. 21-181 (CKK), 2022 LEXIS 10043, at *12-13 (D.D.C. Jan. 19, 2022) (finding that the defendant's ex-spouse was unlikely to readily report violations to law enforcement because the defendant had previously

---

[1] (Available at https://cdn.prod.website-files.com/659c0df344c9c8325dd821ca/6837197775af1c53f8f34cf0_JailUpdate_Web_v5.pdf)

violently prevented her from reporting his abuse of her to emergency services).

Latoya Bell is a suitable third-party custodian. She was interviewed by Pretrial Services and we understand she was deemed eligible to serve as a third-party custodian. Despite the significant burden that would be imposed as a third-party custodian, she is committed to helping Mr. Rosser and serving as the eyes and ears of Pretrial Services and the Court. Mr. Rosser understands the expectations she will place on him and is grateful for her support.

### V.     Mr. Rosser Is Not a Flight Risk

As with all individuals charged with a crime, he is presumed innocent. The circumstances that led to the events of September 2, 2025, will not be repeated. Mr. Rosser thought the individuals that attempted to kill him on August 29, 2025 had returned when the unmarked van with tinted windows backed up into his car. He understands that he needs to seek treatment to address what happened to him on August 29, 2025. He also intends to pursue criminal charges against those responsible. His successful completion of diversion in 2019 DVM 89 demonstrates to the Court that he will appear as required. In the one instance where he was under supervision of a court and pretrial services, he complied with all conditions and the matter was dismissed. The Court can impose home incarceration and order that he not drive, which will address any concerns about risk of flight that may exist.

**Conclusion**

Mr. Rosser understands and appreciates the seriousness of the charges he faces in this Court. The proposed conditions of release are sufficient to ensure his appearance at future court appearances and trial. To the extent the Court believes he poses a threat to any person or the community, it can be mitigated by home incarceration with GPS monitoring and supervision by Pretrial Services and Ms. Bell. We respectfully submit that pretrial detention is not necessary in this matter, and we ask the Court to grant Mr. Rosser pretrial release.

Dated: September 28, 2025                    Respectfully submitted,

/s/ *Marc Eisenstein*
Marc Eisenstein (DC Bar No. 1007208)
Coburn Greenbaum & Eisenstein, PLLC
1710 Rhode Island Avenue, N.W.
Second Floor
Washington, DC 20036
Phone: (703) 963-7164
Fax: (866) 561-9712
marc@coburngreenbaum.com

*Counsel to Defendant*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 28, 2025 a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record via e-mail.

/s/
Marc Eisenstein

11