IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA ROSSER,<br><br>Defendant. | Case No: 25-CR-291 |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Joshua Rosser, through undersigned counsel, respectfully submits his memorandum in aid of sentencing.

**I.   Introduction**

Mr. Rosser comes before the Court for sentencing after pleading guilty to one misdemeanor count of Assaulting, Resisting, or Impeding Certain Officers or Employees in violation of 18 U.S.C. §§ 111(a)(1) and one count of Felony Fleeing from Law Enforcement in violation of 50 D.C. Code § 2201.05(b)(2).  He accepts full responsibility for his conduct.  However, he is not defined by the poor choices that led to his appearance before this Court for sentencing.  This memorandum is not intended to excuse or minimize his actions, but, rather, to present to the Court a full picture of Mr. Rosser.  We respectfully submit that other factors also have substantial importance in determining the appropriate sentence in this matter.  In particular, we suggest that focus is warranted on trauma he experienced from a young age and the lasting impact it has had on his life.  The events of September 2, 2025 were an aberration and will not be repeated.

Mr. Rosser is ashamed of his actions that led to his appearance before the Court for sentencing.  There was no excuse or justification for his actions—he simply should have

pulled over. In determining the appropriate sentence, the focus is not solely on the conduct at issue. Mr. Rosser should be evaluated based on his entire life. In his case, he faced adversity from before he can remember. His mother struggled with addiction and was unable to care for him. He was taken from home by Child Protective Services, but unable to recall many details. He was placed in foster care for a short period of time. This information is not presented to excuse or minimize Mr. Rosser's actions in this case. But we submit it is critical to consider his life experiences and circumstances in deciding the appropriate sentence.

Mr. Rosser fully understands and appreciates the wrongfulness of his conduct. He accepts responsibility and has vowed to never again put himself in this situation. His family has vowed to stand by him. Mr. Rosser is grateful for the love and support from his family. He knows not everyone is as fortunate as him. He also knows telling his loved ones he will change is not enough; he needs to show his appreciation and commitment to change through his actions. Based on these and other circumstances described below, we ask the Court to impose a variance and sentence Mr. Rosser to time served and nine months of supervised release. This sentence would be sufficient, but not greater than necessary, to effectuate the purposes of sentencing prescribed in 18 U.S.C. § 3553(a).

## Argument

### *Legal Standard*

The Court is required to consider the Federal Sentencing Guidelines in imposing a sentence, but *United States v. Booker,* 543 U.S. 220 (2005) provides that the Guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart*,

442 F.3d 857, 864 (5th Cir. 2006) (citing *Booker*, 543 U.S. at 245–46).  The Guidelines are "but one of eight factors the sentencing judge must consider." *United States v. Ovid*, No. 09-CR-216 (JG), 2010 U.S. Dist. LEXIS 105390, at *5 (E.D.N.Y. Oct. 1, 2010).

The factors enumerated in 18 U.S.C. § 3553(a) direct the Court to consider the full history and character of the defendant.  Focus on the § 3553 factors "produces sentences that are moored to fairness, and to the goals of sentencing set forth in § 3553(a)(2), but sometimes not so much to the advisory Guidelines range." *Id.* at *4-5.  18 U.S.C. § 3553 requires a "sentence sufficient, but not greater than necessary" when the following factors are considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553 (2022).  In considering these factors, 18 U.S.C. § 3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661 (2022).

*History and Characteristics of Mr. Rosser*

Mr. Rosser has a loving, supportive family and close friends. He is a lifelong resident of the District of Columbia. He is a "great young man." Exhibit A, Letter from Tracey Robinson. He comes before the Court with no criminal convictions. Tragically, his mother has struggled with mental health issues her entire life. She was unable to care for Mr. Rosser or his siblings. He was taken from his mother at the age of 7. After spending a short period of time in foster care, he was taken in by his paternal grandmother. During this time, Mr. Rosser struggled in every conceivable way. Fortunately, his Aunt, Stephanie Graves, was able to take him in. She notes how he was initially "a little rambunctious and extremely independent, but that all changed once he was given structure and guidance." Exhibit B, Letter from Stephanie Graves.

After graduating from high school, Mr. Rosser set his sights on college. He was planning to attend college in the U.S. Virgin Islands on a scholarship. A visit to the campus led him to believe it was too far from home, and it was not a good fit. He regrets that decision almost daily. A joke about having to take a boat to classes scared him away. Instead, he enrolled in college at Chowan University in Murfreesboro, North Carolina. Mr. Rosser was thrilled to be able to attend college and be surrounded by individuals seeking to better themselves. It was different from what he saw in Washington, D.C. Unfortunately, the funding he was relying on to pay for school fell through. He could not afford to stay in school and left during the first year. After returning home, he has held multiple retail jobs, ranging from dollar stores, auto repair stores, to grocery stores. He also became a father. Shortly before being arrested, he found an opportunity working for a staffing company based in Virginia. He was excited

4

about the opportunity. It was a chance to advance his career and work with school-age children.

What makes Mr. Rosser most proud is his children. He is the proud father of 7 year old daughter and 6 month old son. They are the light of his life. The fact that he jeopardized his role in their lives through his actions on September 2, 2025 haunts him every. He uses his children as his motivation. They inspire him to stay out of trouble and stay positive. Every day inside the DC Jail was torture knowing his was not able to see them and that he was to blame for that fact. He will not let his family down and will be the role model his children need and deserve.

*Nature and Circumstances of the Offense*

Mr. Rosser assaulted a law enforcement officer while fleeing an attempted traffic stop. On September 2, 2025, a caravan of officers was patrolling the District of Columbia. The law enforcement officers were members of the Executive Order 14252 Task Force. They were in plainclothes and driving unmarked vehicles, including a minivan. Mr. Rosser was driving a vehicle with tinted windows and had a temporary paper tag that was not valid, While Mr. Rosser was stopped at a red light, one of the unmarked police vehicles pulled up next to him. The vehicle had heavily tinted windows and a Virginia license plate:



After the light turned green, the undercover van crossed a solid line and pulled in front of Mr. Rosser.



After cutting in front of Mr. Rosser's vehicle, the undercover van reversed into Mr. Rosser's vehicle, striking it. Mr. Rosser then maneuvered around the vehicle that struck him and turned left at the traffic light. Law enforcement pursued Mr. Rosser. During the pursuit, Mr. Rosser struck an unmarked vehicle, causing a Deputy US Marshal to hit his "head [on] his head rest, resulting in an injury to his head." ECF

6

Dkt. No. 1-1, P.4.  The injury was described as minor and resulted in the use of over-the-counter pain medicine for three (3) days.  The same Deputy US Marshal has stated that Mr. Rosser was attempting to "flee from law enforcement and that [Mr. Rosser] was not trying to directly hit the DUSMs vehicle."  September 10, 2025 Email from AUSA Jared English.  The chase ended, and Mr. Rosser was arrested in the 4100 Block of Stanley Street, SE.  No weapons or drugs were found on Mr. Rosser, in his vehicle, or in the area where he was arrested.

In evaluating the conduct that brings Mr. Rosser before the Court for sentencing, we submit that an event that occurred a few days before his arrest in this case should be considered.  On August 29, 2025, Mr. Rosser was the victim of a crime.  He was moving his belongings out of the apartment of an acquaintance, J.C.  He was previously in a romantic relationship with J.C.  While he was doing this, J.C. arrived at the apartment with her brother and several other males.  The group attacked Mr. Rosser.  They beat him with their hands, and he was stabbed multiple times.  He pleaded for his life.  After several minutes, the group left, leaving Mr. Rosser bloodied.

7



After allowing time to pass and believing they were gone, Mr. Rosser left and went to the home of a relative who lived close by. He was in immense pain, and his clothes were stained with blood from the attack.

His family helped clean him up and calm him down. They also took pictures of his wounds. Mr. Rosser contacted the police. The event was very traumatic for Mr. Rosser, and he was fearful that those responsible would hunt him down and kill him. He had not mustered the strength to make a formal report to law enforcement before his arrest in this case. He had spoken to an MPD investigator and was planning to meet him to make a formal report. This event is not presented to excuse his actions on September 2, 2025. Mr. Rosser knows he should have stopped. But he had not fully processed the violent attack and it impaired his judgment and actions.

*Need for The Sentence Imposed*

Mr. Rosser is ashamed and embarrassed of his actions. We presented details about his upbringing and circumstances in order to help put his actions in context, not to excuse them. This case has had a profound effect on Mr. Rosser. While any period of incarceration is difficult, the period of incarceration he served from September 2, 2025 to October 8, 2025 was especially severe. Mr. Rosser had never spent the night incarcerated prior to his arrest in this case. The conditions at the jail are difficult for even those with lengthy criminal histories. While he was incarcerated three inmates were stabbed in one day. Liam Bowman, *Three Inmates Injured in D.C. Jail Stabbing, Police Say*, Washington Post, Sept. 26, 2025, https://www.washingtonpost.com/dc-md-va/2025/09/26/dc-jail-stabbing/. There are well-documented reports of rodent infestations, flooding, mold, and constant violence. *Urgent Need for New D.C. Jail*, Report by the Office of the D.C. Auditor, May 28, 2025. There are also issues with accessing medical care, specifically being seen by outside providers. *Id*. at p. 81.

The inadequate medical care directly impacted Mr. Rosser. While he was incarcerated, he was suffering from a serious medical issue, a broken foot. He was waiting for a referral to be seen by an outside provider and surgery. Magistrate Judge Upadhyaya attempted to facilitate the approval of the referral, but no progress was made. After he was released, Mr. Rosser was able to get the surgery that had been needed since September. Only time will tell if the delay will result in permanent damage. The period of incarceration he served, particularly in the punitive conditions existing at the DC Jail, will have a lifelong impact on Mr. Rosser. Inside the jail, he encountered individuals that did not seem to mind being incarcerated. They accepted

that being in and out of jail in prison was part of their life. Mr. Rosser could not think of a more horrible existence—he will never find himself in custody again. He is grateful that the Court released him on October 8, 2025 and allowed him to return to his family.

We respectfully submit that the community is better served by not imposing any additional period of incarceration. Mr. Rosser needs help and support, not punitive incarceration. He needs skills to learn how to support himself, make the right decisions, and build on the progress he had made. Mr. Rosser has expressed genuine remorse and a desire to change. Not a day goes by that he does not think about the actions of September 2, 2025 that led to his appearance before this Court. Mr. Rosser has already started to take advantage of any and all opportunities to gain life skills and make the right decisions. Since being release he enrolled in barber school at Hair Academy in New Carrollton, Maryland. Laura Gordon, the Director of Education, described Mr. Rosser as "very polite and respectful" and an "excellent student." Exhibit C, Letter from Laura Gordon. She notes that "Mr. Rosser will be a great asset to any shop he works for, because of his outstanding skills, professionalism, and eye for details." *Id.* He plans to continue in the program and stay until his anticipated graduation in January 2027.

It is clear to Mr. Rosser that the path he was on prior to his arrest in September 2025 was going to end in more tragedy for him and his family. He was making poor decisions and not dealing with prior trauma. The last few months have allowed him to mature, gain insight into his past, and plan for the future.

*The Imposition of a Fine Is Unnecessary*

We respectfully request that the Court exercise its discretion to decline to impose a fine upon Mr. Rosser. Imposing a monetary fine would not serve the interest of justice or the public interest. His convictions entail a number of consequences, all of which will negatively impact his life. Mr. Rosser is working to reintegrate back into society and obtain stable employment. The imposition of a fine would only serve to hinder this objective. He also has an obligation to pay restitution.

## **Conclusion**

Mr. Rosser understands that the situation he finds himself in is the direct result of his actions. It is our submission that he is not and should not be defined by his actions that led to his appearance before the Court. He accepted responsibility and pleaded guilty to demonstrate his remorse. He will continue to try to make amends to show that his desire to change is genuine through his actions. We respectfully submit that a variance to a sentence of time served is appropriate and in accordance with the requirements set forth in 18 U.S.C. § 3553(a) and ask the Court to impose such a sentence.

Respectfully submitted,

*/s/ Marc Eisenstein*

Marc Eisenstein
Coburn & Eisenstein PLLC
1200 G Street, NW
8th Floor
Washington, DC 20005
Tel: 202-470-2695
marc@coburngreenbaum.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 15, 2026 a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record.

/s/
Marc Eisenstein
